UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD N. TOTARO,<br><br>Defendant. | 4:99-CR-40137-RAL<br><br><br>OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |

## I. Factual Background

Ronald Totaro was convicted by a jury of 61 counts of mail fraud, wire fraud, money laundering, engaging in unlawful money transactions, and RICO racketeering in 2001. United States v. Totaro, No CR 99-40137—RHB, 2010 WL 883773, at *1 (D.S.D. March 10, 2010). The convictions resulted from an "advance fee" scheme Totaro ran from 1984 until 1999 in which he scammed investors out of millions of dollars. United States v. Totaro, 40 F. App'x 321, 322 (8th Cir. 2002). To accomplish his scheme, Totaro posed as an international banker and convinced individuals and small businesses that he could broker high-risk loans by taking their advanced fees and pooling it with other investors' advanced fees to offer a private placement to secure more funds which he would then use to grant those investors favorable loans. Id.; Totaro v. The Hon. Richard H. Battey, No. 12-4143-RAL. He presented a convincing show to his victims by representing that he had high ratings from investor services and showing them forged documents. Totaro, 40 Fed. App'x at 322. He even placed advertisements on the internet and in periodicals

seeking out borrowers to defraud. Id. at 325. Rather than follow through with the plan he presented to his investors, Totaro pocketed the advanced fees his victims, many of whom were from South Dakota, had provided him. Id. Prior to this scheme, Totaro had been convicted of mail fraud for a similar scheme in the Western District of New York in 1984. Id. at 322.

For these crimes, Totaro was sentenced to thirty years in prison and ordered to pay more than two million dollars in restitution. Id. In March 2020, Totaro filed a compassionate release request, Doc. 29, in file Totaro v. United States, 19-cv-4057-RAL, a parallel habeas action, that was dismissed on August 11, 2020. Doc. 33. This court filed the same opinion and order in the present file, 4:99-CR-40137-RAL. Doc. 718. While the habeas action was ongoing and considering the COVID-19 pandemic, the Bureau of Prisons (BOP) transferred Totaro from FCI Fort Dix Camp to home confinement under the supervision of a halfway house, The Drapelick Center, Community Solutions, in Bloomfield, Connecticut on June 3, 2020. Doc. 725. He has lived with his wife since his release. Doc 725. Despite his release to home confinement, Totaro asks this Court for compassionate release, arguing that home confinement may still be withheld or revoked by the BOP. Doc. 725. For the reasons stated herein, this Court denies Totaro's motion for compassionate release, Doc. 725, at this time.

## II.     Legal Standard

The First Step Act modified 18 U.S.C. § 3582(c) to allow inmates to move to reduce their sentences based on "'extraordinary and compelling' circumstances." United States v. Loggins, 966 F.3d 891, 892 (8th Cir. 2020). Such a motion "is sometimes described as a request for 'compassionate release.'" Id.; see also United States v. Hodgin, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *1 (D.S.D. Mar. 11, 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).

In considering a motion for compassionate release, a court first considers whether the motion is supported by the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582 (c)(1)(A); Loggins, 966 F.3d at 892. "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." Loggins, 966 F.3d at 893. The defendant has the burden to show that his circumstances warrant a sentence reduction under 18 U.S.C. § 3582(c). United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). After considering the § 3553(a) sentencing factors, a court may grant a motion for compassionate release if it is consistent with the relevant policy statements of the Sentencing Commission. 18 U.S.C. § 3582 (c)(1)(A); Loggins, 966 F.3d at 892.

### III. Discussion

#### A. 18 U.S.C. § 3553(a) Sentencing Factors

Section 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (2) the kinds of sentences available;
>
> (3) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines ...

The sentencing factors in 18 U.S.C. 3553(a) supported a considerable sentence for Totaro's offenses. He committed sophisticated financial crimes that created a long list of victims, each of whom lost thousands of dollars, and resulted in a total restitution amount of almost $2.3 million.

See Totaro, 4:99-cr-40137-RAL, Doc. 619 at 6–7, 9. These crimes were serious, especially considering that it was Totaro's second conviction for this type of offense. See Totaro, 40 Fed. App'x at 322. The original sentence was quite harsh, no doubt designed not only to deter Totaro from committing similar crimes which his prior conviction apparently had not, but also to protect the public from him continuing to perpetrate these types of scams. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, the sentencing court determined that a total sentence of 360 months, broken down among the 61 counts of conviction.

Totaro contends he presents no danger to himself, any person or the community by pointing to his positive record during confinement during which he did not incur any disciplinary reports or lose any good time credit, Doc. 725 at 8. However, Totaro's crimes did not involve physical violence, but rather were financial in nature so his behavior control in custody, while commendable, is less an indication of being reformed than it would be for a violent offender. Regardless, the same factors that supported the court's original sentence still exist today, though Totaro is now much older than when he was committing the white collar offenses. Totaro's motion is denied. See United States v. Rodd, 966 F.3d 740, 747 (8th Cir. 2020) (quoting United States v. Rodd, No. CR 13-230 ADM/JSM, 2019 WL 5623973, at *4 (D. Minn. Oct. 31, 2019)) (affirming the denial of an inmate's motion for compassionate release when "the Section 3553(a) factors present at sentencing have not changed").

### B. Extraordinary and Compelling Reason

This Court next looks to whether "extraordinary and compelling reasons" exist to justify a sentence reduction. Congress has left it to the Sentencing Commission[1] to promulgate what

---

[1] The Sentencing Commission has not had a quorum since the First Step Act has passed, and so it has not updated its policy statement. United States v. Vonwille, No. 4:19-CR-40023-01-KES, 2021 WL 1734337, at *2 (D.S.D. May 3,

constitutes "extraordinary and compelling reasons." 28 U.S.C. § 994(t). The policy statement of the Sentencing Commission, U.S.S.G. § 1B1.13, states that "extraordinary and compelling reasons" may exist under the following circumstances:

> (A) "Medical Condition of the Defendant--" such as when the defendant is suffering from a terminal illness, a serious cognitive or functional impairment, or deterioration from the aging process;
>
> (B) "Age of the Defendant--" such when the defendant is at least 65 years old, suffering serious physical or mental deterioration due to the aging process, and has served certain portion of his sentence;
>
> (C) "Family Circumstances--" which may apply upon
> (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or
> (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner;" or
>
> (D) "Other Reasons," such as when "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" exists.

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

Totaro bases his motion on two arguments. First, Totaro argues that he qualifies for compassionate release pursuant to subsection (B) to §1B1.13 comment note 1. Doc. 725 at 11. Subsection (B) provides that extraordinary and compelling reasons exist if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his... term of imprisonment, whichever is less." While Totaro meets the objective requirements of subsections

---

2021). As a result, district courts have questioned whether 18 U.S.S.G. § 1B1.13 still applies and whether courts may consider other "extraordinary and compelling" reasons under the "Other Reasons" subsection, U.S.S.G. § 1B1.13 cmt. n.1(D). See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-CR-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same); United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (same). The Eighth Circuit has not yet addressed the issue. United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); Vonwille, 2021 WL 1734337, at *2 (citing Vangh, 990 F.3d at 1141 n.3).

(i) and (iii) because he is 79 years old and has served more than 20 years of his sentence, Doc. 725 at 12, the question then becomes whether he is experiencing a serious deterioration in physical or mental health because of the aging process.

Totaro argues that "[i]t is precisely because of his advanced age . . . his deteriorating physical condition as well as mental stability over concerns for his wife's serious health condition," Doc. 725 at 12, that he meets the "extraordinary and compelling" standard to warrant an immediate sentence reduction. This Court previously stated that "[b]ecause Totaro has been released from confinement in a correctional institution and can therefore treat and exercise his condition more freely . . . his hip pain and osteoarthritis do not create the type of 'serious deterioration' necessary to constitute a sentence reduction at this time." Doc. 718. Totaro responds that because he is legally still in BOP custody, his home confinement can be rescinded at any moment and his "movement and activities are subject to the constant arbitrary approval and supervision by the BOP authorized halfway house." Doc. 725 at 11. While the Court understands Totaro's frustration with continued supervision, compassionate release does not mean release without conditions. If Totaro experiences further deterioration of his physical health so that satisfying the requirements imposed by the BOP becomes impossible or if the BOP rescinds home confinement, he is free to refile a motion for compassionate release in his criminal file.

Totaro also argues he qualifies for compassionate release pursuant to subsection (C)(ii) to §1B1.13 comment note 1 which states that "extraordinary and compelling" reasons also exist with "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(c)(ii). Totaro argues that his wife's recent diagnosis of Acute Myeloid Leukemia justifies compassionate release as "[h]is wife will begin chemotherapy treatments 3 times per week[.]" Doc. 725 at 10.

Totaro contends he was not permitted to accompany his wife for testing and consultations with doctors. Doc. 725 at 10. Although the Court is sympathetic to Totaro's wife's medical condition, he has not demonstrated that she is "incapacitated" or that he is the only available caregiver.

Guidance from the BOP Program Statement on U.S.S.G. 1B1.13 cmt. n.1(C)(ii) states that "'incapacitation'" means the inmate's spouse or registered partner has:

> [1] Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or
>
> [2] A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

BOP Program Statement 5050.50 at 10, accessible at https://perma.cc/98YN-KRQX. In the unfortunate event that Totaro's wife's medical condition worsens to the point she is incapacitated and Totaro is deemed the only available caregiver, Totaro is free to resubmit his request following the documentation process outlined in the BOP Program statement. BOP Program Statement 5050.50 at 10, accessible at https://perma.cc/98YN-KRQX

Because this Court does not currently find "extraordinary and compelling reasons" for a sentence reduction at this time, it need not inquire into whether a reduction would be consistent with the Sentencing Commission's policy statement.

For the reasons stated herein, it is hereby

ORDERED that Totaro's motion for compassionate release, Doc. 725, is denied at this time.

DATED this __10__ th day of November, 2021.

                                         BY THE COURT:

                                         _____
                                         ROBERTO A. LANGE
                                         CHIEF JUDGE