UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD N. TOTARO,<br><br>Defendant. | 4:99-CR-40137-RAL<br><br><br>OPINION AND ORDER DENYING MOTION FOR JUDICIAL DISQUALIFICATION AND GRANTING MOTION TO RECONSIDER MOTION FOR COMPASSIONATE RELEASE |

This opinion and order denying motion for judicial disqualification and granting reconsideration stems from a petition for compassionate release filed by Ronald Totaro. This Court denies the motion to disqualify due to an absence of judicial bias, but this Court grants reconsideration of its previous order denying Totaro's compassionate release and orders that Totaro's remaining sentence be reduced from home confinement to supervised release.

I.      **Factual Background**

In 2001, Totaro was convicted by a jury of 61 counts of mail fraud, wire fraud, money laundering, engaging in unlawful money transactions, and RICO racketeering. United States v. Totaro, No CR 99-40137—RHB, 2010 WL 883773, at *1 (D.S.D. March 10, 2010). The convictions resulted from an "advance fee" scheme Totaro ran from 1984 until 1999 in which he scammed investors out of millions of dollars. United States v. Totaro, 40 F. App'x 321, 322 (8th Cir. 2002). Prior to this scheme, Totaro had been convicted of mail fraud for a similar scheme in the Western District of New York in 1984. Id.

1

For these crimes, Totaro was sentenced to thirty years in prison and ordered to pay more than two million dollars in restitution.  Id.  Thereafter, Totaro filed numerous motions and appeals[1] seeking relief in this district court, the United States Court of Appeals for the Eighth Circuit, and Supreme Court of the United States.  In 2013, the undersigned judge was reassigned to Totaro's case after the retirement of the trial and sentencing judge, the Honorable Richard H. Battey.  Doc. 695.  In 2014, the Clerk of Court for the District of South Dakota mailed Totaro a copy of a portion of the docket in 99-40137 which disclosed an internal "flag" entered by the Clerk of Court in 2013.  Doc. 698.  The docket text "flag" read:

---

[1] See, e.g.,. Docs.  352 (motion for recusal), 367, (order denying motion for recusal), 559 (notice of appeal to Eighth Circuit Court of Appeals of judgment of conviction), 570 (motion to correct clerical error in sentencing), 571 (order denying motion to correct clerical error), 585-86 (order from Eighth Circuit Court of Appeals affirming conviction), 625 (letter to prevent destruction of documents and for transcript of sentence hearing), 628 (Dodd motion), 631 (motion for reduced sentence), 632 (motion for discovery), 633 (motion for release pending appeal), 634 (motion to disqualify judge), 636 (order denying motion for recusal), 639, (appeal of motion of recusal), 642-45 (order and opinion from Eighth Circuit affirming district court judgment/striking line denying new filings), 646 (petition for writ of certiorari), 647 (order from Supreme Court of the United States denying cert of appeal), 648 (letter regarding motion to recuse), 650 (motion for reconsideration for relief from judgment), 653-54 (motion for reconsideration), 657 (notice of appeal of motion for reconsideration), 662-63 (motion for relief and brief in support), 666 (motion of appeal directly to Eighth Circuit), 667 (notice of appeal regarding motion for relief from judgment), 671 (order from Eighth Circuit affirming denial of appeal), 676-80 (petition for writ of audita querela and supporting motions), 683 (appeal to Eighth Circuit of writ of audita querela), 691 (notice of appeal to Supreme Court of the United States), 693 (order from Supreme Court of the United States denying cert), 694 (motion for relief from judgment), 697 (request for docket activity), 698 (letter from Clerk with docket activity), 699 (notice of appeal to Eighth Circuit of denial of motion for miscellaneous relief), 702-04 (judgment and order denying appeal from Eighth Circuit), 710-11 (motion for relief under the First Step Act and supplement), 716 (reply motion response), 718 (order denying compassionate release), 720 (motion for appeal of First Step Act), 723-24 (order from Eighth Circuit affirming denial of First Step Act petition), 725-26 (second motion for compassionate release via the First Step Act), 734 (supplement), 736 (motion for judicial disqualification/reconsideration), 739-40 (supplement and reply); see also Totaro v. USA, 4:04-cv-04053-RHB (motion to vacate); Totaro v. USA, 4:10-cv-04162-RHB (motion to vacate); Totaro v. Battey, 4:12-cv-04143-RAL (petition for writ of mandamus); Totaro v. USA, 4:13-cv-04097-RAL (motion to vacate); Totaro v. USA, 4:19-cv-04057-RAL (petition for writ of habeas corpus); Totaro v. USA, 5:08-cv-05041-RHB (writ of habeas corpus).

2

"(Court Only) *** Set/Clear Flags as to Ronald N. Totaro. (MWT)."
Doc. 736-1 at ¶ 3.

In March 2020, Totaro filed a compassionate release request, Doc. 29, in <u>Totaro v. United</u> <u>States</u>, 19-cv-4057-RAL, a parallel habeas action. This Court dismissed the parallel habeas case on August 11, 2020, Doc. 33, and filed the same opinion and order in the present file, 4:99-CR-40137-RAL, denying the requested compassionate release. Doc. 718. While the habeas action was ongoing and considering the COVID-19 pandemic, the Bureau of Prisons (BOP) on June 3, 2020, transferred Totaro from FCI Fort Dix Camp to home confinement under the supervision of a halfway house, The Drapelick Center, Community Solutions, in Bloomfield, Connecticut. Doc. 725. He has lived with his wife since his release. Doc 725.

Despite his release to home confinement, Totaro asked this Court again for compassionate release in September 2021, arguing that home confinement may still be withheld or revoked by the BOP. Doc. 725. Totaro contended his failing health, as well as his wife's recent cancer diagnosis and treatment plan, qualified as extraordinary and compelling reasons justifying compassionate release. Doc. 725.

On October 6, 2021, the Federal Public Defender Office filed a notice of intent to submit a supplemental brief regarding Totaro's First Step Act request. Doc. On November 3, 2021, the Federal Public Defender's Office filed a request for an extension to file the supplemental brief, Doc. 730, which was granted on November 4, 2021. Docs. 731–32. This Court filed prematurely an opinion and order, Doc. 733, denying Totaro's motion for compassionate release on November 10, 2021, before the Federal Public Defender's Office filed its supplemental brief. This Court then withdrew the decision through a notice of filing error. Doc. 733. That same day, the Federal Public Defender's Office filed the supplement supporting Totaro's motion for compassionate

3

release.  Doc. 734.  On December 3, 2021, after evaluating the supplement submitted by the Federal Public Defender's Office as well as Totaro's compassionate release request, this Court issued an opinion and order denying Totaro's motion for compassionate release.  Doc. 735.

Totaro now moves for judicial disqualification and reconsideration of his compassionate release request.  Doc. 736.  The United States has responded arguing against both the motions to reconsider and for judicial disqualification.  Doc. 738.  Totaro has submitted a supplement and reply which included a recommendation for compassionate release from his Drapelick Center case manager, Karen Davis.  Docs. 739, 739-1, 740.

## II.    Discussion

### A.  Judicial Disqualification

Totaro contends this Court exhibited bias throughout his proceedings and therefore must recuse itself.[2]  Doc. 736.  Specifically, Totaro points to the adverse decision the Court made denying his motion for compassionate release, an order the Court filed prematurely in November of 2021 denying compassionate release, the administrative "flag" entry in 2013, and certain other things throughout the procedural history of the case that Totaro claims are evidence of bias.  Docs. 736, 736-1.

"Title 28, U.S.C. § 455 dictates the circumstances in which a judge must disqualify himself in a proceeding."  In re Kansas Pub. Emps. Ret. Sys., 85 F.3d 1353, 1358 (8th Cir. 1996) (hereafter In re KPERS).  Subsection 455(a) requires a United States judge disqualify himself[3] "in any

---

[2] This is Totaro's second motion to disqualify having moved once before to disqualify Judge Battey when he was the presiding judge, which was denied.  See Docs. 634, 636.
[3] Presently close to one-third of federal judges are female, but this Court uses the male pronoun as in § 455.  That statute dates back to 1948 when the male pronoun sadly reflected that all federal district judges were men.  Presiding Harry S. Truman in 1949 nominated Burnita Shelton Matthews to serve as the first female federal district judge.  *Women's History Month*, U.S. COURTS

4

proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a). Subsection 455(b)(1) requires a judge recuse himself when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).   The Eighth Circuit applies "an objective standard of reasonableness in determining whether recusal is required," Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 789 (8th Cir. 2009), and has recast the issue as "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." In re KPERS, 85 F.3d at 1358.  Specifically, "[u]nder § 455(a), disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003) (cleaned up and citation omitted).  "This restriction is intended to promote public confidence in the integrity of the judicial process." Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002).

The Eighth Circuit has also pointed to statements from the Senate Judiciary Committee, in recommending what became § 455(a) under the 1974 amendments to § 455, to provide guidance for judges who must decide whether to disqualify themselves under § 455(a):

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in [§ 455(a) ] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial.  Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

---

https://www.uscourts.gov/about-federal-courts/educational-resources/annual-observances/womens-history-month (last accessed March 11, 2022).

In re KPERS, 85 F.3d at 1358–59 (quoting S.Rep. No. 93–419S.Rep. No. 93–419, 93d Cong., 1st

Sess. 5 (1973) (quoted in 13A Wright, Miller & Cooper, Federal Practice and Procedure: Juris 2d §

3549, at 623–24)).

"[A] judge is presumed to be impartial and the party seeking disqualification bears the

substantial burden of proving otherwise." United States v. Minard, 856 F.3d 555, 557 (8th Cir.

2017) (cleaned up and citation omitted); see also United States v. Denton, 434 F.3d 1104, 1111

(8th Cir. 2006). "An unfavorable judicial ruling . . . does not raise an inference of bias or require

the trial judge's recusal." Harris v. Missouri, 960 F.2d 738, 740 (8th Cir. 1992). "However, the

inquiry whether a reasonable person, knowing all the relevant facts, would discern potential

impropriety certainly warrants consideration of a judge's course or pattern of rulings, and also of

the judge's course of conduct." Moran, 296 F.3d at 649. "In order to establish bias or prejudice

from in court conduct, a party must show the judge had a disposition so extreme as to display a

clear inability to render a fair judgment." Am. Prairie Const. Co., 560 F.3d at 790 (cleaned up and

citation omitted). In other words, "opinions formed by the judge on the basis of facts introduced

or events occurring in the course of the current proceedings, or of prior proceedings, do not

constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or

antagonism that would make fair judgment impossible." Id. (cleaned up and citation omitted).

Even "expressions of impatience, dissatisfaction, annoyance, and even anger are not sufficient to

require recusal." United States v. Delorme, 964 F.3d 678, 681 (8th Cir. 2020) (cleaned up and

citation omitted).

In his motion for judicial disqualification, Totaro implies that the Court's unfavorable

rulings against his numerous petitions for relief, including the Court's most recent decision to deny

compassionate release, are evidence of bias. Doc. 736-1 at ¶¶ 1-3, 13, 27–29. As previously

mentioned, an unfavorable judicial ruling does not raise an inference of bias. Harris, 960 F.2d at 740. In fact, this Court has previously stated that if the factors weighing against release change, Totaro could again seek relief from the Court. Doc. 735 at 7–8 (stating that Totaro would be free to again file for compassionate release if he was ordered to return to a BOP facility from home confinement or if his wife's medical condition worsens).

The numerous adverse decisions, often affirmed by the United States Court of Appeals for the Eighth Circuit, suggest more about the merit of Totaro's appeals than the temperament of his judges. As this Court will explain in the next section, up to this point, both the sentencing factors and an analysis of whether Totaro's circumstances qualify as "extraordinary and compelling" have not merited greater relief beyond what the BOP has granted, and therefore any adverse ruling against him should not be considered as evidence of judicial bias.

Next, Totaro points to an internal tag used in the courts CM/ECF file management program in 2014 as evidence of bias. Doc. 736-1 at ¶ 3. Often the Clerk of Court uses internal "flags" to classify cases in its record-keeping system. Totaro fails to explain, and this Court is unaware how entry of any such "flags" would have been detrimental to Totaro. This Court had not ascribed any weight to any internal "flag," but recently asked the Clerk of Court about the designation Totaro highlights. The Clerk of Court explained that "flags" are internal notations at the top of the docket sheet in the version of the program that the Clerk sees noting attributes of the case. For instance, the current "flags" on Totaro's case include "PRO SE," "CLOSED," and "FIRST STEP." The entry Totaro highlights simply reflects that the Clerk either set or removed one such flag. Thus, "flags" entered by the Clerk of Court on the docket sheet are not evidence of judicial bias.

Next, Totaro contends that the opinion and order denying compassionate release, Doc. 733, filed prematurely in November of 2021, followed by a different opinion and order considering

subsequent arguments, is evidence of impartiality requiring disqualification.  Totaro claims that by issuing a decision before receiving a response from the government, the Court failed to consider whether the government would have contested his request for compassionate release.  Doc. 736-1 at ¶¶ 22–24.

The First Step Act provides for "'a complete review of the motion on the merits,' . . . which means that the district court considered petitioner's arguments and had a reasoned basis for its decision."  United States v. Howard, 989 F.3d 1068, 1070 (8th Cir. 2021) (quoting Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222).  In United States v. Howard, the Eighth Circuit remanded a compassionate release request back to the district court when it ruled on a petitioner's request before the petitioner's counsel had an opportunity to submit a supplemental brief on the petitioner's behalf.   989 F.3d at 1070.  The Eighth Circuit said it was "unable to conduct a meaningful appellate review of the district court's order" because "while the district court offered a basis for its decision, it did not consider any arguments from either party."  Id.

It is true this Court erroneously filed in November of 2021 an opinion and order denying Totaro's compassionate release request without first receiving and therefore considering the supplement from the Federal Public Defender's Office; however, it is untrue this is evidence of bias.  When the Court filed its November of 2021 opinion and order, it had only considered the supporting briefs offered by Totaro pro se and the government's response.   See Doc. 733.  Conversely, when this Court issued its December 3rd opinion and order denying compassionate release, this Court had evaluated the supplement submitted by the Federal Public Defender's Office and included it as part of its discussion.   See Doc. 735 at 6 fn.2, 8 (referencing the supplement filed by the Federal Public Defender's Office).

Totaro also asserts that the government would not have opposed his latest request for supervised release if this Court had waited longer to rule. Doc. 736-1 at ¶¶ 22–24. Totaro's argument is undercut by the fact that the government resists granting reconsideration and release even now. Doc. 738.

Often, "cases in which courts have found that recusal was required under § 455(a) due to bias deal with situations where the judge failed to make any disclosure of potential bias before or during trial." United States v. Rubashkin, 655 F.3d 849, 858 (8th Cir. 2011). Totaro presents no evidence of such bias. Thus, this Court denies Totaro's motion for judicial disqualification. See Fredin v. Middlecamp, No. 17-CV-03058 (SRN/HB), 2020 WL 7418967, at *2 (D. Minn. Dec. 18, 2020) (finding that when there is no evidence of bias, recusal is arguably prohibited).

### B.  Reconsideration

Totaro moves for reconsideration, Doc. 736, of this Court's opinion and order, Doc. 735, denying his motion for compassionate release. Doc. 725. In doing so, Totaro cites to Rule 59(e) of the Federal Rules of Civil Procedure. Some district courts have applied Rule 59(e) to reconsider a compassionate release request in circuits that apply the civil standard to criminal motions to reconsider. See United States v. Clark, No. 6:07-013-DCR, 2019 WL 7161208, at *1 (E.D. Ky. Feb. 27, 2019) ("Although the Federal Rules of Civil Procedure do not apply directly to criminal cases, courts review motions to reconsider under the same standard as motions to alter or amend under Rule 59(e)."). However, the Eighth Circuit has not determined whether it would apply the civil standard in criminal cases. United States v. Luger, 837 F.3d 870, 875 (8th Cir. 2016) ("Although this court has never had occasion to do so, courts in other Circuits have held that this civil standard applies to motions for reconsideration raised in criminal cases outside of the suppression context."); see also Howard, 989 F.3d at 1070 (remanding motion to reconsider

9

compassionate release petition to district court).  The Supreme Court of the United States has

applied Rule 59(e) to reconsider habeas actions, but habeas petitions are filed as civil cases.

Banister v. Davis, 140 S. Ct. 1698, 1702 (2020).

Although it is unsettled whether the district court can reconsider a denial of a First Step

Act compassionate release petition under Federal Rule of Civil Procedure 59(e), this Court

nevertheless has the inherent authority to reconsider a ruling as long as it has jurisdiction in the

case.  Dietz v. Bouldin, 579 U.S. 40, 45 (2016) ("[A] district court possesses inherent powers that

are governed not by rule or statute but by the control necessarily vested in courts to manage their

own affairs so as to achieve the orderly and expeditious disposition of cases."); United States v.

Martin, 226 F.3d 1042, 1049 (9th Cir. 2000) (stating that district courts have inherent authority to

reconsider their own orders unless there is law to the contrary).  The alternative is to deem Totaro's

request to reconsider as a newly filed motion for compassionate release, which leads to the same

analysis.  See United States v. Jones, 608 F.2d 386, 390 n.2 (9th Cir. 1979) (stating it is the

Supreme Court's preference for reconsideration over appeal because it favors judicial economy).

Besides, much of the Supreme Court's reasoning to reconsider denial of habeas actions under Rule

59(e) applies equally to reconsidering a denial of a First Step Act compassionate release petition.[4]

---

[4] In addressing the application of Rule 59(e) to a habeas petition, the Supreme Court has stated:

> Indeed, the availability of Rule 59(e) may make habeas proceedings more efficient.
> Most obviously, the Rule enables a district court to reverse a mistaken judgment,
> and so make an appeal altogether unnecessary. . . .  Of course, Rule 59(e) motions
> seldom change judicial outcomes.  But even when they do not, they give habeas
> courts the chance to clarify their reasoning or address arguments (often made in
> less-than-limpid pro se petitions) passed over or misunderstood before. . . .  That
> opportunity, too, promotes an economic and effective appellate process, as the
> reviewing court gets the benefit of the district court's plenary findings. . . .  And
> when a district court sees no need to change a decision, the costs of permitting a
> Rule 59(e) motion are typically slight.  A judge familiar with a habeas applicant's
> claims can usually make quick work of a meritless motion. . . .  Rule 59(e) motions

A district court's decision on a motion for reconsideration rests within its discretion. Hagerman v. Yukon Energy Corp., 839 F.2d 407, 413 (8th Cir. 1988). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Id. at 414. As part of recent filings, Totaro presents a letter from the case manager at the Drapelick Community Center reentry organization and contends the Court made an error of law by denying his motion for compassionate release. Doc. 736-1. This Court grants Totaro's motion for reconsideration, elaborates on its previous opinions and orders denying compassionate release, Docs. 718, 735, and ultimately grants Totaro's request for compassionate release to the limited extent that he is allowed to serve the rest of his sentence on supervised release if he abides by conditions of supervision.

The First Step Act modified 18 U.S.C. § 3582(c) to allow inmates to move to reduce their sentences based on "'extraordinary and compelling' circumstances." United States v. Loggins, 966 F.3d 891, 892 (8th Cir. 2020). Such a motion "is sometimes described as a request for 'compassionate release.'" Id.; see also United States v. Hodgin, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *1 (D.S.D. Mar. 11, 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).

In considering a motion for compassionate release, a court first considers whether the motion is supported by the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582 (c)(1)(A); Loggins, 966 F.3d at 892. "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." Loggins, 966 F.3d at 893. The

---

are not second or successive petitions, but instead a part of a prisoner's first habeas proceeding. In timing and substance, a Rule 59(e) motion hews closely to the initial application; and the habeas court's disposition of the former fuses with its decision on the latter. Such a motion does not enable a prisoner to abuse the habeas process by stringing out his claims over the years. It instead gives the court a brief chance to fix mistakes before its (single) judgment on a (single) habeas application becomes final and thereby triggers the time for appeal.

"wide latitude to weigh the § 3553(a) factors" means the district court can "assign some factors greater weight than others in determining an appropriate sentence." United States v. Harris, 960 F.3d 1103, 1107 (8th Cir. 2020), cert. denied, 141 S. Ct. 1438 (2021). The defendant has the burden to show that his circumstances warrant a sentence reduction under 18 U.S.C. § 3582(c). United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). After considering the § 3553(a) sentencing factors, a court *may* grant a motion for compassionate release if it is consistent with the relevant policy statements of the Sentencing Commission. 18 U.S.C. § 3582 (c)(1)(A); Loggins, 966 F.3d at 892.

Totaro argues that because he has met some of the circumstances that qualify as "extraordinary and compelling" under the policy statements of the Sentencing Commission in U.S.S.G. § 1B1.13, he is entitled to relief. Yet "nothing in the First Step Act requires a court to reduce a sentence . . . ." United States v. Shepard, 8 F.4th 729, 732 (8th Cir. 2021); see also United States v. Johnson, No. 18-CR-0271 WMW/HB, 2021 WL 2498524, at *8 (D. Minn. June 3, 2021) (finding sufficient evidence that inmate's medical conditions qualified as "extraordinary and compelling" but denying release based on the nature and circumstances of the offense). Before determining whether "extraordinary and compelling" circumstances exist to justify compassionate release, courts must first determine whether a sentence reduction would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582 (c)(1)(A). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines ....

18 U.S.C. § 3553(a).

As this Court explained in its previous opinion and order denying compassionate release, Doc. 735, the sentencing factors in 18 U.S.C. 3553(a) supported a considerable sentence for Totaro's offenses. He committed sophisticated financial crimes bilking a long list of victims, each of whom lost thousands of dollars, and which resulted in a total restitution amount (even after some monies were reclaimed and assets seized) of almost $2.3 million. See Totaro, 4:99-cr-40137-RAL, Doc. 619 at 6–7, 9. Totaro's crimes were serious, especially considering that Totaro had previously been convicted for the same type of offense and was unrepentant throughout his case. See Totaro, 40 F. App'x at 322. The original sentence was no doubt designed not only to deter Totaro from committing similar crimes which his prior conviction apparently had not[5], but also to protect the public from him continuing to perpetrate such scams. As mentioned above, courts have the discretion to weigh the § 3553(a) factors and assign some more weight than others. Harris, 960 F.3d at 1107. In order to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, the sentencing judge determined that a total sentence of 360 months, broken down among the 61 counts of conviction, was a sufficient, but not greater than necessary, sentence. See 18 U.S.C. § 3582 (c)(1)(A), see also United States v. Rodd, 966 F.3d 740, 747–48 (8th Cir. 2020) (affirming a district court's denial of compassionate release

_____

[5] In Totaro's latest filings, he remains unrepentant and asserts his innocence, despite proof beyond a reasonable doubt of his criminal conduct and the denial of his numerous post-trial motions and appeals. Docs. 736, 739.

because § 3553(a) sentencing factors weighed against granting the petition despite the petitioner's claim of post-conviction rehabilitation and extraordinary and compelling circumstances justifying release).

When this Court previously ruled on Totaro's motion for compassionate release, Totaro did not meet the criteria for "extraordinary and compelling" circumstances under U.S.S.G. § 1B1.13 that would justify relief beyond the accommodation that the BOP had already granted. The policy statement of the Sentencing Commission, U.S.S.G. § 1B1.13, states that "extraordinary and compelling reasons" may exist under the following circumstances:

> (A) "Medical Condition of the Defendant--" such as when the defendant is suffering from a terminal illness, a serious cognitive or functional impairment, or deterioration from the aging process;
>
> (B) "Age of the Defendant--" such when the defendant is at least 65 years old, suffering serious physical or mental deterioration due to the aging process, and has served certain portion of his sentence;
>
> (C) "Family Circumstances--" which may apply upon
> (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or
> (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner;" or
>
> (D) "Other Reasons," such as when "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" exists.[6]

---

[6] The Sentencing Commission has not had a quorum since the First Step Act has passed, and so it has not updated its policy statement. United States v. Vonville, No. 4:19-CR-40023-01-KES, 2021 WL 1734337, at *2 (D.S.D. May 3, 2021). As a result, district courts have questioned whether 18 U.S.S.G. § 1B1.13 still applies and whether courts may consider other "extraordinary and compelling" reasons under the "Other Reasons" subsection, U.S.S.G. § 1B1.13 cmt. n.1(D). See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-CR-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same); United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (same). The Eighth Circuit has stated that "a guidelines policy statement is important advisory guidance, but it is binding only if it prohibits a district court from taking a

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

As this Court has previously discussed, Totaro based his motion on sections (B) and (C). First, Totaro argued that he qualified for compassionate release pursuant to section (B) to §1B1.13 comment note 1. Docs. 725. Section (B) provides that extraordinary and compelling reasons exist if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his... term of imprisonment, whichever is less." Because Totaro met the objective requirements of subsections (i) and (iii) because he was then 79 years old (now 80 years old) and had served more than 20 years of his sentence, Doc. 725, the question then became whether he was experiencing a serious deterioration in physical or mental health because of the aging process. Totaro pointed to his advanced age and several medical conditions including elevated blood pressure, hip pain and "severe degenerative joint disease" in both ankles, Docs. 725, 736, 739. But as this Court explained, Totaro had been released from being housed in a BOP facility to home confinement and therefore could treat his conditions more freely, so his circumstances did not warrant a sentence reduction. Doc. 718.

Totaro responded that he is still in the "custody" of the BOP and, because he is on home confinement, he cannot attend church or go shopping or travel with his wife to her chemotherapy treatments without prior approval. Docs. 725 at 11, 736 at 4, 736-1 at ¶ 26. ("Supervision is not the same as home confinement and judge Lange knows this. With supervision, Totaro would not be subject to home confinement and would not have to make and hope that requests to go to church,

---

specified action." <u>United States v. Marcussen</u>, 15 F.4th 855, 859 (8th Cir. 2021) (cleaned up and citation omitted). Since the policy statements in § 1B1.13 are advisory, a district court "properly look[s] to this commentary as relevant but not binding . . . [s]o long as a district court does not explicitly limit its discretion to the factors identified in USSG § 1B1.13 and its commentary." <u>Id.</u>

go shopping, go to the doctor, or accompany his wife to her chemotherapy treatments would be approved."). He also argues that he may be ordered back into a BOP correctional facility when the COVID-19 pandemic national emergency ends. Doc. 736. While Totaro is correct that he must observe different conditions under home confinement as opposed to supervised release, such things as asking permission to attend church, go shopping or accompany his wife on medical visits do not impact his own self-care for his allegedly "seriously deteriorating" medical conditions. And as this Court had stated previously, if Totaro were to be ordered to return to a correctional facility or his health conditions worsened "so that satisfying the requirements imposed by the BOP becomes impossible," this Court would consider compassionate release through a sentence reduction. Doc. 735 at 7.

Additionally, section (C) of U.S.S.G. § 1B1.13 did not quite provide Totaro relief as his family circumstances did not meet the criteria outlined as extraordinary and compelling circumstances. Section (C)(ii) states that extraordinary and compelling circumstances may exist if the defendant's spouse is incapacitated and the defendant would be the only available caregiver. U.S.S.G. § 1B1.13 cmt. n.1(C)(ii). Totaro has explained that his wife has been diagnosed with "Acute Myeloid Leukemia" and is undergoing extensive chemotherapy appointments three times a week which he wishes to attend. Docs. 725, 739. As the Court has previously explained, guidance from the BOP Program Statement on U.S.S.G. 1B1.13 cmt. n.1(C)(ii) states that "incapacitation" means the inmate's spouse or registered partner has:

> [1] Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or

> [2] A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

BOP Program Statement 5050.50 at 10, accessible at https://perma.cc/98YN-KRQX. The supporting brief submitted by the Office of the Federal Public Defender indicated that Totaro's wife was still able to drive herself to and from her chemotherapy appointments, and that one of Totaro's adult sons and his family lived nearby and could care for Totaro's wife in the event of an emergency. Doc. 734 at 5. Given that Totaro's wife's medical condition had not worsened to the point that she was incapacitated and there appeared to be other family members in the area who could provide ongoing care, Totaro did not have an "extraordinary and compelling" reason justifying compassionate release to care for his wife when this Court entered the opinion and order in December of 2021.

Totaro's latest filings regarding the denial of compassionate release reassert "extraordinary and compelling" circumstances and include a recommendation for compassionate release from his case manager at the Drapelick Center, Karen Davis, that would justify release. See Docs. 736, 736-1 at ¶ 26, 739, 739-1, 740. This Court now takes the rare step of granting Totaro's motion for reconsideration to evaluate whether Totaro's sentence can be reduced via section (D) for "Other Reasons," such as when "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" exists. U.S.S.G. § 1B1.13 cmt. n.1(D).

While Totaro does not meet the criteria for extraordinary and compelling circumstances in sections (A) through (C) to justify relief beyond the home confinement already granted by BOP, he has a strong case under section (D) when considering the totality of his circumstances. Totaro is now 80 years of age and has served more than 80 percent of his statutory sentence, taking into account good time credit, and nearly 70 percent of the sentence imposed. Doc. 734. Totaro had an exemplary behavioral record while in BOP custody and served in many leadership positions as

an inmate. Docs. 725, 734, 739, 739-1. Totaro's request for a sentence reduction from home confinement to supervised release seems to be based on a desire to attend his wife's weekly chemotherapy treatments and avoid possible return to a BOP facility after the pandemic abates. Docs. 725 at 10–11, 736 at 5, 736-1 at ¶ 26. While Totaro's wife is not incapacitated, she is receiving intensive medical care on a weekly basis for leukemia, and Totaro may be better able to assist with her chemotherapy treatments if he is not impeded by his need to get approval to leave home. Doc. 725. Finally, Totaro most recently received a favorable recommendation from Karen Davis, his case manager at the Drapelick Center, which is providing supervision on home confinement. Doc. 739-1. Davis states, "[b]ased on his activities, his age (80), his health, time served in prison, and the serious condition of his wife being treated for leukemia, we believe that Mr. Totaro is a good candidate for compassionate release." Doc. 739-1.

While extraordinary and compelling reasons may exist under section (D) of the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13 cmt. n.1(D), to grant Totaro's compassionate release petition, this Court still must analyze whether release would be appropriate based on the § 3553(a) sentencing factors. See 18 U.S.C. § 3582 (c)(1)(A), see also Rodd, 966 F.3d at 747. Totaro's crimes were serious in nature and scope and despite plain evidence of his guilt and years of losing appeals, he refuses to acknowledge his culpability. These factors weigh against a sentence reduction. Yet Totaro's advanced age, time served in custody and positive behavior in BOP custody and while on home confinement weigh in favor. While the Sentencing Commission policy statement specifically states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement[.]" U.S.S.G. 1B1.13 cmt. n.1(3), this Court credits Totaro for his behavior in prison and while under supervision on home confinement and for the positive recommendation from his case manager. Further, Totaro

is already released from the confines of a BOP facility having served his sentence under home confinement since June of 2020. The Court does not foresee Totaro as any greater danger on supervised release than he is on home confinement.

Therefore, this Court will grant Totaro's request for compassionate release to the limited extent of allowing Totaro to serve the remainder of his sentence on supervised release assuming he continues to meet the appropriate conditions.[7] This Court hopes that this order and explanation of its previous decisions provides Totaro some degree of peace and greater flexibility to care for his wife. This Court expects Totaro to abide by all conditions of supervision including never again resorting to any financial scams, lest his supervised release be revoked.

### III. Conclusion

For the reasons stated above, it is

ORDERED that Totaro's motion for judicial disqualification, Doc. 736, is denied but that Totaro's motion for reconsideration of his compassionate release request, Doc. 736, is granted to

---

[7] This Court fashions relief pursuant to 18 U.S.C. § 3582 (c)(1)(A) which provides that:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-- (i) extraordinary and compelling reasons warrant such a reduction; or (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

the extent that Totaro be allowed to serve the remainder of his sentence under the supervision of the United States Probation Office ("probation office") assuming he continues to meet the conditions of supervised release.  It is further

ORDERED that the probation office prepare an Amended Judgment where Totaro's sentence is modified under 18 U.S.C. § 3582(c)(1)(A) to "all time served through the date of this Amended Judgment" followed by supervised release calculated as the remainder of the time Totaro would have been in BOP custody or home confinement (less the good time credit he earned) plus the three years of supervised release (concurrent on each count of conviction) as set forth in the Judgment, Doc. 567.  The standard conditions of supervised release shall be updated to the ones adopted in the District of South Dakota effective November 1, 2016.  The special conditions of supervised release shall remain those in the Judgment, Doc. 567.  It is further

ORDERED that the probation office coordinate with the District of Connecticut to have Totaro's supervision transferred to that district and that the probation office may delay submission of the Amended Judgment for signature until such arrangements are made.  It is finally

ORDERED that until such time as the Amended Judgment enters, Totaro shall continue to abide by the conditions set for his home confinement.

DATED this 16th day of March, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

20