UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD N. TOTARO,<br><br>Defendant. | 4:99-CR-40137-RAL<br><br>OPINION AND ORDER DENYING MOTIONS FOR JUDICIAL DISQUALIFICATION, RECONSIDERATION OF RESTITUTION, AND INJUNCTIVE RELIEF |

Defendant Ronald N. Totaro ("Totaro") filed a Second Motion for Judicial Disqualification and Reconsideration of the Terms of Probation and Restitution, Doc. 757, and Motion for Preliminary Injunction (Temporary Restraining Order), Doc. 760, after this Court increased his monthly restitution in the aftermath of granting Totaro's motion for compassionate release, Doc. 741. This Court denies the second motion to disqualify due to an absence of judicial bias, denies the motion for reconsideration, and denies the motion for preliminary injunction (temporary restraining order) because the Federal Rule of Civil Procedure 65 standard is not met, and the motion essentially seeks reconsideration of a prior ruling.

I.      **Factual Background**

In 2001, Totaro was convicted by a jury of 61 counts of mail fraud, wire fraud, money laundering, engaging in unlawful money transactions, and RICO racketeering. United States v. Totaro, No CR 99-40137-RHB, 2010 WL 883773, at *1 (D.S.D. March 10, 2010). The convictions resulted from an "advance fee" scheme Totaro ran from 1984 until 1999 in which he scammed

1

investors out of millions of dollars. United States v. Totaro, 40 F. App'x 321, 322 (8th Cir. 2002). Prior to this scheme, Totaro had been convicted of mail fraud for a similar scheme in the Western District of New York in 1984. Id.

For these crimes, Totaro was sentenced to thirty years in prison and ordered to pay more than two million dollars in restitution.[1]   Id.   Thereafter, Totaro filed numerous motions, new lawsuits, and appeals seeking relief in this Court, the United States Court of Appeals for the Eighth Circuit, and Supreme Court of the United States. [2]  In 2013, the undersigned judge was reassigned

---

[1] By July 2022, Totaro had paid $317,133.17 of the $2,297,739.00 restitution order.

[2] See, e.g,.  Docs. 352 (motion for recusal by co-defendant), 367, (order denying motion for recusal), 559 (notice of appeal to Eighth Circuit Court of Appeals of judgment of conviction), 570 (motion to correct clerical error in sentencing), 571 (order denying motion to correct clerical error), 585–86 (order from Eighth Circuit Court of Appeals affirming conviction), 625 (letter to prevent destruction of documents and for transcript of sentence hearing), 628 (Dodd motion), 631 (motion for reduced sentence), 632 (motion for discovery), 633 (motion for release pending appeal), 634 (motion to disqualify judge), 636 (order denying motion for recusal), 639, (appeal of motion of recusal), 642-45 (order and opinion from Eighth Circuit affirming district court judgment/striking line denying new filings), 646 (petition for writ of certiorari), 647 (order from Supreme Court of the United States denying writ of certiorari), 648 (letter regarding motion to recuse), 650 (motion for reconsideration for relief from judgment), 653–54 (motion for reconsideration), 657 (notice of appeal of motion for reconsideration), 662–63 (motion for relief and brief in support), 666 (motion of appeal directly to Eighth Circuit), 667 (notice of appeal regarding motion for relief from judgment), 671 (order from Eighth Circuit affirming denial of appeal), 676–80 (petition for writ of audita querela and supporting motions), 683 (appeal to Eighth Circuit of writ of audita querela), 691 (notice of appeal to Supreme Court of the United States), 693 (order from Supreme Court of the United States denying certiorari), 694 (motion for relief from judgment), 697 (request for docket activity), 698 (letter from Clerk with docket activity), 699 (notice of appeal to Eighth Circuit of denial of motion for miscellaneous relief), 702–04 (judgment and order denying appeal from Eighth Circuit), 710–11 (motion for relief under the First Step Act and supplement), 716 (reply motion response), 718 (opinion and order denying compassionate release), 720 (notice of appeal of First Step Act), 723–24 (order from Eighth Circuit affirming denial of First Step Act petition), 725–26 (second motion for relief under First Step Act, compassionate release, and supplement), 734 (supplement), 736 (motion for judicial disqualification and reconsideration), 739–40 (supplement and reply); see also Totaro v. United States, 4:04-cv-04053-RHB (motion to vacate); Totaro v. United States, 4:10-cv-04162-RHB (motion to vacate); Totaro v. Battey, 4:12-cv-04143-RAL (petition for writ of mandamus); Totaro v. United States, 4:13-cv-04097-RAL (motion to vacate); Totaro v. USA, 4:19-cv-04057-RAL (petition for writ of habeas corpus); Totaro v. United States, 5:08-cv-05041-RHB (writ of habeas corpus).

to Totaro's case after the retirement of the trial and sentencing judge, the Honorable Richard H. Battey. Doc. 695.

In March 2020, Totaro filed a compassionate release request in a parallel habeas action. Doc. 29 in 19-cv-4057-RAL. This Court dismissed the parallel habeas case on August 11, 2020, Doc. 33 in 19-cv-4057-RAL, and filed the same opinion and order in the present file, 4:99-cr-40137-RAL, denying the requested compassionate release, Doc. 718. While the habeas action was ongoing and considering the COVID-19 pandemic, the Bureau of Prisons ("BOP") on June 3, 2020, transferred Totaro from FCI Fort Dix Camp to home confinement under the supervision of a halfway house, The Drapelick Center, Community Solutions, in Bloomfield, Connecticut. Doc. 725. He has lived with his wife since his release, who has been in treatment for cancer. Id.

Despite his release to home confinement, Totaro asked this Court again for compassionate release in September 2021, arguing that home confinement may still be withheld or revoked by the BOP. Doc. 725. Totaro contended his failing health, as well as his wife's cancer diagnosis and treatment plan, qualified as extraordinary and compelling reasons justifying compassionate release. Doc. 725. This Court initially denied Totaro's compassionate release request in December 2021, Doc. 735, but granted Totaro's second compassionate release request in March 2022, Doc. 741; Doc. 743. The Second Amended Judgment of Conviction accordingly ordered that Totaro be committed to a term of imprisonment of "[a]ll time served through the date of this Second Amended Judgment." Doc. 743 at 2. As a condition of supervised release, this Court ordered that "[t]he defendant will be on supervised [release] until 09/04/2026 pursuant to 18 U.S.C. § 3582(c)(1)(A). Following that term, the defendant will begin a 3 year term of supervised release, concurrent on each count of conviction." Doc. 743 at 3. The Second Amended Judgment carried

through language from the original judgment for Totaro to make $200 monthly restitution payments. Doc. 743.

This Court, realizing that Totaro would hardly make a dent in the approximately two million dollars of restitution owed by paying $200 per month and that Totaro's early release might allow him to pay more in monthly restitution, ordered Totaro to show cause why his monthly restitution payments should not be increased. Doc. 742. The government, Doc. 751; Doc. 752, and Totaro responded, Doc. 745; Doc. 747; Doc. 754, with financial data and memorandums. Totaro claimed to have monthly income of $1,132 from social security payments. Doc. 745. He claimed his monthly expenses totaled $1,940, and that he gives his wife $1,000 each month. Doc. 745; Doc. 747. Totaro moved to suspend restitution payments. Doc. 750. Totaro also submitted a request to correct error in the record regarding the order granting him supervised release. Doc. 746. This Court denied those motions because Totaro's circumstances showed a better ability to pay now that he is on supervised release and because there was no actual error in the record. Doc. 755. Based on the briefing, this Court amended the judgment and ordered Totaro to pay $1,000 a month towards restitution. Doc. 755.

Totaro had previously filed motions for disqualification, Doc. 634; Doc. 736, which were denied, Doc. 636; Doc. 741. Totaro now has filed another motion for judicial disqualification and reconsideration of the terms of probation[3] and restitution, Doc. 757, and a motion for preliminary injunction (temporary restraining order), Doc. 760. For the reasons discussed below, this Court denies all pending motions.

---

[3] More accurately, the motion for reconsideration should be for terms of supervised release, rather than probation, because there is no federal parole system. Boneshirt v. United States, Nos. CIV 3-3008-RAL, (10-CR-30008-RAL), 2014 WL 6605613, at *10 (D.S.D. Nov. 19, 2014) ("[T]here is presently no parole system for federal inmates[.]").

## II.  Discussion

### A.  Judicial Disqualification

Totaro contends this Court exhibited bias throughout his proceedings and therefore must recuse itself.  Doc. 757.  Totaro reiterates the arguments he made in his prior motion for judicial disqualification, Doc. 736, which was denied, Doc. 741.  This Court will not retread old ground, and instead will focus on arguments not initially made in Totaro's prior motion.  Besides his old arguments, Totaro points to a text order that he believes resulted in a letter in support being "disregarded" and the recent decisions issued in this case, specifically the orders denying his motion to correct the record and increasing the amount of his monthly restitution payments.  See generally Doc. 757-1 (describing all Totaro's arguments, including ones already addressed by this Court).

"Title 28, U.S.C. § 455 dictates the circumstances in which a judge must disqualify himself in a proceeding."  In re Kansas Pub. Emps. Ret. Sys. (In re KPERS), 85 F.3d 1353, 1358 (8th Cir. 1996).  Subsection 455(a) requires a United States judge to disqualify himself[4] "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Subsection 455(b)(1) requires a judge to recuse himself when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).  The Eighth Circuit applies "an objective standard of reasonableness in determining whether recusal is required," Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 789 (8th

---

[4] Presently, close to one-third of federal judges are female, but this Court uses the male pronoun as in § 455.  That statute dates back to 1948 when the male pronoun sadly reflected that all federal district judges were men.  In 1949, President Harry S. Truman nominated Burnita Shelton Matthews to serve as the first female federal district judge.  Women's History Month, U.S. Courts https://www.uscourts.gov/about-federal-courts/educational-resources/annual-observances/womens-history-month (last accessed Nov. 17, 2022).

Cir. 2009), and has recast the issue as "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." In re KPERS, 85 F.3d at 1358. Specifically, "[u]nder § 455(a), disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003) (cleaned up and citation omitted). "This restriction is intended to promote public confidence in the integrity of the judicial process." Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (cleaned up and citation omitted).

The legislative history of 28 U.S.C. § 455(a) provides guidance for judges who must decide whether to disqualify themselves:

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in [§ 455(a)] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

In re KPERS, 85 F.3d at 1358–59 (quoting S.Rep. No. 93–419, 93d Cong., 1st Sess. 5 (1973) (quoted in 13A Wright, Miller & Cooper, Federal Practice and Procedure: Juris 2d § 3549, at 623–24)).

"[A] judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." United States v. Minard, 856 F.3d 555, 557 (8th Cir. 2017) (cleaned up and citation omitted); see also United States v. Denton, 434 F.3d 1104, 1111 (8th Cir. 2006). "An unfavorable judicial ruling . . . does not raise an inference of bias or require the trial judge's recusal." Harris v. Missouri, 960 F.2d 738, 740 (8th Cir. 1992) (citations omitted).

6

"However, the inquiry whether a reasonable person, knowing all the relevant facts, would discern potential impropriety certainly warrants consideration of a judge's course or pattern of rulings, and also of the judge's course of conduct." Moran, 296 F.3d at 649. "In order to establish bias or prejudice from in court conduct, a party must show the judge had a disposition so extreme as to display a clear inability to render a fair judgment." Am. Prairie Const. Co., 560 F.3d at 790 (cleaned up and citation omitted). In other words:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Id. (cleaned up and citation omitted). Even "expressions of impatience, dissatisfaction, annoyance, and even anger are not sufficient to require recusal." United States v. Delorme, 964 F.3d 678, 681 (8th Cir. 2020) (cleaned up and citation omitted).

In his motion for judicial disqualification, Totaro implies that this Court's unfavorable rulings against him are evidence of bias. Doc. 757 at 6, 11; Doc. 757-1 at ¶¶ 159, 167, 173, 179, 182–85, 188, 191–93. As previously mentioned, an unfavorable judicial ruling does not raise an inference of bias. Harris, 960 F.2d at 740. Regarding the prior motion to correct, Totaro's motion was denied as the error was only perceived and not actual. Doc. 755 at 5–6. When ruling on the issue of increased monthly restitution payments now that Totaro is out of custody, this Court allowed both sides the chance to submit information and briefing before increasing Totaro's monthly restitution obligation, from $200 per month to $1,000 per month, which is a modest increase in comparison to the nearly two million dollars Totaro still owes to his victims. Doc. 742. As stated in the Court's initial order, district courts are obligated to impose restitution in the full amount of a victim's losses "without consideration of the economic circumstances of the defendant." Doc. 755 at 3 (quoting United States v. McGlothlin, 249 F.3d 783, 784 (8th Cir. 2001)

(quoting § 3664(f)(1)(A))). Instead, the economic conditions and the ability of the offender's ability to pay is "relevant only in determining whether restitution should be paid by lump-sum, a schedule of payments, or nominal payments." McGlothlin, 249 F.3d at 784; see also Doc. 755 at 3. This Court's application of established law imposing a $1,000 monthly restitution payment schedule does not indicate bias simply because Totaro is dissatisfied and wants excused from any monthly restitution payment.

Next, as evidence of bias, Totaro points to a text order stating a letter "should be disregarded."[5] Doc. 757 at 12; Doc. 757-1 at ¶ 161. The full text order actually reads "NOTICE of Filing Error: 717 Letter [from Msgr. Jan C. Olowin] was filed in error and should be disregarded. (Letter filed in 19-4057). (DJP) (Entered 07/29/2019)." Case 19-cv-4057-RAL is the file number for Totaro's Habeas Corpus petition, which was ongoing at the same time. The letter was initially

---

[5] Totaro claims in his motion that he received "a number of commendations and letters of recommendation from prison staff," including one from FCI McKean Supervisory Chaplain Jan C. Olowin. Doc. 757 at 12. Totaro reports Chaplin Olowin's letter as stating "Totaro was an exemplary inmate with no incident reports and a hard worker on his assignments, was a faithful supporter of the chapel ministries where he worked for 7 years, and that he acted as a leader to other inmates" and "I, along with Brian Henry, his Case Manager and staff Chaplain Brian Grimm, believe this is a case very much in need of review . . . . This is the first time in my eight years of service in the BOP that I have advocated for an inmate in this way. I take the court's decisions seriously but would be remiss in my professional responsibilities if I did not address this situation." Id. However, the letter received reads, in full:

> Dear Clerk of the Court,
> I am writing on behalf of Ronald N. Totaro 4:99-CR-40137-RAL of PCI Ft Dix camp, NJ. Mr Totaro made a motion for Compassionate release to which the government did not object and wrote a proposed order to the court that he should be released to time served -over 20 years -and due to his age and the nature of his conviction. As the Supervisory Chaplain of FCI McKean where Mr Totaro was incarcerated I found him to be an expla[r]y inmate with no incident reports and a hard worker on his assignments. At this time I believe an appropriate review of his case is due that meets the requirements of the new First Step Act for time served release. Thank you for your consideration.

This is the only letter in either file from Chaplin Olowin. Doc. 717; Doc. 8 in 19-cv-4057-RAL. As such, it appears that Totaro's characterization of the letter was, to say the least, embellished.

filed in this, the incorrect case, 99-cr-40137-RAL, by mistake. Doc. 717. The Clerk of Court

through a text order then removed the letter from this file and filed it in the proper case. Doc. 8 in

19-cv-4057-RAL. Thus, rather than "disregarding" the letter as Totaro claimed, the order was

simply to have the letter filed in the proper case to be considered in that matter. Regardless, this

Court ultimately did credit material such as the letter in granting Totaro compassionate release.

See Doc. 741; Doc. 743.

Often, "cases in which courts have found that recusal was required under § 455(a) due to

bias deal with situations where the judge failed to make any disclosure of potential bias before or

during trial." United States v. Rubashkin, 655 F.3d 849, 858 (8th Cir. 2011). Totaro presents no

evidence of such bias. Thus, this Court denies Totaro's motion for judicial disqualification. See

Fredin v. Middlecamp, No. 17-CV-03058, 2020 WL 7418967, at *2 (D. Minn. Dec. 18, 2020)

(finding that when there is no evidence of bias, recusal is arguably prohibited).

**B. Reconsideration of Probation and Restitution**

Totaro moves for reconsideration, Doc. 757, of this Court's opinion and order increasing

his restitution, Doc. 755, and terms of his supervised release, Doc. 756. This Court has the inherent

authority to reconsider a ruling as long as it has jurisdiction in the case. Dietz v. Bouldin, 579 U.S.

40, 45 (2016) ("[A] district court possesses inherent powers that are governed not by rule or statute

but by the control necessarily vested in courts to manage their own affairs so as to achieve the

orderly and expeditious disposition of cases."); United States v. Martin, 226 F.3d 1042, 1049 (9th

Cir. 2000) (stating that district courts have inherent authority to reconsider their own orders unless

there is law to the contrary). A district court's decision on a motion for reconsideration rests within

its discretion. Hagerman v. Yukon Energy Corp., 839 F.2d 407, 413 (8th Cir. 1988). "Motions

for reconsideration serve a limited function: to correct manifest errors of law or fact or to present

newly discovered evidence." Id. at 414.  However, Totaro presents no errors in fact or law, beyond his own discontent with this Court's rulings and his theory that his prosecution is linked to former President Bill Clinton taking offense to a letter Totaro sent.  Doc. 757-1.  As such, the motion for reconsideration, Doc. 757, is denied.

### C. Preliminary Injunction

Totaro also filed a Motion for Preliminary Injunction (Temporary Restraining Order), Doc. 760, invoking Rule 65 of the Federal Rules of Civil Procedure.  A motion for a temporary restraining order is an ex parte request reserved for true emergency situations where a court order is imperative to prevent immediate and irreparable harm before the adverse party can be heard.  To justify a temporary restraining order, the movant is required to establish (1) "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard" and (2) "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. Pro. 65(b)(1).  Totaro's motion includes no such affidavit nor effort to show why no notice should be given to the United States.  Doc. 760.  To the extent Totaro's motion is seeking a temporary restraining order, it must be denied.

For the issuance of a preliminary injunction under Rule 65(b), authority from the Eighth Circuit requires considering the threat of irreparable harm, the balance of harms between the parties, the probability of success, and the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  Totaro's motion does not meet the Dataphase factors to show that he is entitled to the injunction requested.

Totaro has not established irreparable harm.  "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction. It is well established that irreparable harm occurs when a party has no adequate remedy at law, typically because its

injuries cannot be fully compensated through an award of damages." Grasso Enters., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1040 (8th Cir. 2016) (cleaned up and citations omitted); Watkins, Inc. v. Lewis, 346 F.3d 841, 844–46 (8th Cir. 2003) (finding the moving party failed to prove irreparable harm by alleging economic harm); Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir.1999) (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–07 (1959)) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); Breadeaux's Pisa, LLC v. Beckman Bros. Ltd., No. 21-06162-CV-SJ-BP, 2022 WL 1447947, at *3 (W.D. Mo. Apr. 21, 2022) ("Harm is irreparable if legal remedies, such as monetary damages, are inadequate to address the harm.  Thus, economic loss does not, in and of itself, constitute irreparable harm because the party suffering the economic loss can receive full compensation through monetary damages." (cleaned up and citations omitted)). The moving party bears the burden of proof and must present evidence to support a claim of irreparable injury. Grasso Enters., LLC, 809 F.3d at 1041 n.4.  Totaro's motion only argues economic hardship from paying monthly restitution, Doc. 760 at 11–12, and that is not harm considered to be irreparable.

The balance of harm weighs against issuing the injunction Totaro seeks.  The balance of harm analysis requires a court to consider "what would result in the following scenarios: (1) if the preliminary injunction was improperly denied because plaintiffs prevailed on the merits of the case; and (2) if the preliminary injunction was improperly granted because defendants prevailed on the merits of the case." Planned Parenthood Minn., N.D., S.D. v. Noem, 584 F. Supp. 3d 759, 781 (D.S.D. 2022) (citations omitted).  As discussed next, Totaro has no realistic likelihood of success on the merits of getting his monthly restitution payments decreased.  If this Court were to grant the injunction, despite not being entitled to relief, the harm caused would be delaying

restitution to victims of Totaro's crimes and making it even less likely that they receive their long overdue restitution. On the other hand, if this Court were to deny the motion and Totaro somehow could succeed, his damages could be easily recouped and repaired by suspending the lesser monthly restitution amount of $200 set by Judge Battey decades ago.

Next, Totaro would not succeed on the merits of his claim. As explained above, the reconsideration standard is high, and Totaro has failed to meet it. Further, as explained in this Court's order increasing restitution payments, a court has discretion to determine how an offender will pay restitution. Section § 3664(k) allows a court to modify a restitution order under certain circumstances. United States v. Dejong, No. 13-00134-01-CR-W-HFS, 2018 WL 9371685, at *1 (W.D. Mo. Nov. 16, 2018). "While the statute authorizes a district court to make a change in a defendant's restitution obligations, doing so requires a material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." Id. (cleaned up and citations omitted). Here, Totaro's early release from custody through this Court granting compassionate release justified consideration of an increase in monthly restitution from $200 to $1,000 per month to pay a small part of the nearly two million dollars in restitution a wee bit quicker. Totaro disagrees but has not presented evidence for this Court to reverse itself and did not appeal that decision.

Totaro does not just want his payment reduced back to $200 per month; he wants to be excused from paying any monthly restitution. There has been no material change in Totaro's economic conditions to justify eliminating his monthly restitution obligation. Totaro contends any additional payments would disadvantage his wife, who is undergoing cancer treatment. However, neither Totaro nor his wife seem to be at imminent risk of economic uncertainty that would justify reducing restitution. See United States v. Vanhorn, 399 F.3d 884, 886 (8th Cir. 2005) (holding

HIV diagnosis and treatment did not constitute material change in economic conditions because petitioner was not suffering any immediate hardship). In fact, Totaro's wife's economic condition seems secure absent Totaro's support as financial data shows she owns the home the couple lives in, a $45,000 vehicle and has over $80,000 in savings, plus Medicare likely covers much of her medical expenses. Doc. 751. Perceived financial hardship is not an adequate reason justifying a decrease in restitution. See Dejong, 2018 WL 9371685, at *1 ("Although defendant complains that the monthly restitution increase from $65.00 to $100.00 creates a financial hardship, it does not constitute a material change such that it affects defendant's ability to pay restitution."); United States v. Brown, No. 12CR01723SRNAJB, 2018 WL 2135015, at *7 (D. Minn. May 9, 2018) (wishing to save money or spend in another fashion does not equate to material change in economic conditions). Totaro's circumstances do not justify excusing him from making restitution payments.

Finally, the public interest weighs in favor of not granting Totaro the requested injunction. As of July of this year, Totaro has paid less than a quarter of the restitution he owes his victims. Totaro's pleadings continue to show that he has no remorse for his actions and continues to maintain his innocence despite being found guilty by a jury of his peers to have stolen over two million dollars. The victims in Totaro's crimes have long awaited repayment for many years. Issuing the injunction Totaro seeks would further frustrate victims getting restitution contrary to the public interest.

Because all the relevant legal factors and procedural considerations weigh against Totaro, his motion for preliminary injunction and temporary restraining order, Doc. 760, is denied.

### III.   Conclusion

For the reasons stated above, it is

13

ORDERED that Totaro's motion for judicial disqualification and reconsideration of probation and restitution, Doc. 757, is denied.  It is finally

ORDERED that Totaro's motion for preliminary injunction (temporary restraining order), Doc. 760, is denied.

DATED this ___22nd___ day of November, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

14